**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**

Darren Starr

   v.                                                        Civil No. 05-cv-264-PB

Cpl. Dube, et al.

**O R D E R**

Before the Court is Darren Starr's complaint (document no. 1), filed pursuant to 42 U.S.C. § 1983, alleging that various employees of the New Hampshire Department of Corrections ("NHDOC") have violated his First Amendment rights by retaliating against Starr for the contents of an internal grievance he filed. Because Starr is a prisoner filing *pro se* and *in forma pauperis*, the matter is before me for preliminary review to determine whether or not Starr has stated a claim upon which relief might be granted. See 28 U.S.C. § 1915A(a); United States District Court for the District of New Hampshire Local Rule ("LR") 4.3(d)(2).

Standard of Review

Under this Court's local rules, when an incarcerated plaintiff commences an action *pro se* and *in forma pauperis*, the

magistrate judge is directed to conduct a preliminary review and to prepare a report and recommendation determining whether the complaint or any portion thereof should be dismissed because:

> (i) the allegation of poverty is untrue, the action is frivolous, malicious, or fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief under 28 U.S.C. § 1915A(b); or
>
> (ii) it fails to establish subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).

LR 4.3(d)(2). In conducting the preliminary review, the Court construes *pro se* pleadings liberally. See Ayala Serrano v. Lebron Gonzales, 909 F.2d 8, 15 (1st Cir. 1990) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976) to construe *pro se* pleadings liberally in favor of the *pro se* party). "The policy behind affording *pro se* plaintiffs liberal interpretation is that if they present sufficient facts, the court may intuit the correct cause of action, even if it was imperfectly pled." Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997), cert. denied, Ahmed v. Greenwood, 522 U.S. 1148 (1998).

At this preliminary stage of review, all factual assertions made by the plaintiff and inferences reasonably drawn therefrom must be accepted as true. See Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996) (stating the "failure to state a claim" standard

of review and explaining that all "well-pleaded factual averments," not bald assertions, must be accepted as true). This review ensures that *pro se* pleadings are given fair and meaningful consideration. See Eveland v. Dir. of C.I.A., 843 F.2d 46, 49 (1st Cir. 1988).

### Background

Darren Starr has been incarcerated at the New Hampshire State Prison since the late 1980s. He has been held at the Northern New Hampshire Correctional Facility ("NCF") since July of 2000.

On July 23, 2003, Starr was asked to sign a canteen slip by Cpl. Dube, who was on duty at the canteen. Dube, however, did not allow Starr to see the entirety of the form that he was signing. Starr complained via internal grievance procedures about this situation, which occurred more than once during the summer of 2003. Starr was told that he would not be allowed to view the form he was signing because canteen was too busy to afford him that opportunity, but that he could obtain a photocopy of the form if he requested it and paid for it at least one week prior to going to the canteen.

In the body of his third internal grievance form regarding this situation, dated September 15, 2003, Starr stated that "Cpl. Dube is simply being an unprofessional little man with an unreasonable control problem." This grievance form was forwarded to Lt. John Lovan. Lovan determined that the words "little man" in the complaint were disrespectful to Cpl. Dube and forwarded a copy of the grievance form to be investigated for possible disciplinary infractions. Additionally, Lovan forwarded a copy of the form to Dube. On September 16, 2003, Dube filed a disciplinary report against Starr for "insubordination or disrespect toward a staff member." Lovan served as the investigating officer for the infraction and took Starr's not guilty plea on September 17, 2003.

On the following day, September 18, 2003, Dube left his post at the canteen, which was apparently not as busy as it had been on July 23, and went to Starr's cell while Starr was elsewhere in the facility. Dube asked Starr's cellmate to identify which items belonged to Starr. Dube then proceeded to conduct what Starr describes as a "destructive cell search" of Starr's property. Starr alleges that his personal papers and legal papers and books were dumped haphazardly all over the cell, that

his personal belongings were strewn about the cell, that his food supplies were dumped out and rendered unusable, and that his hygiene products, such as soap and shampoo were opened and dumped on his food and his other property.  Much of Starr's property was damaged and had to be thrown away.  The property that was salvageable was left in great disarray.  None of Starr's cellmate's property was searched or disturbed at all.

On September 24, 2003, a disciplinary hearing was held on the "little man" infraction.  The charge was dismissed on procedural grounds. After the charge was dismissed, Starr filed a grievance with NCF Warden Cattell alleging that the disciplinary report and cell search were made in retaliation for Starr's filing of a grievance against Dube.  Cattell denied the grievance.  Starr then appealed to the NHDOC Commissioner and his appeal was denied by Attorney John Vinson acting on behalf of the Commissioner's office.

Starr now alleges that his First Amendment right to petition the government for a redress of grievances was violated when the state actors, Dube and Lovan, retaliated against Starr for the content of his grievance.  Starr further alleges that Cattell and

Vinson furthered the violation by knowingly allowing the violation of his First Amendment rights to go unredressed.

## Discussion

The First Amendment's guarantee of a right to petition the government for a redress of grievances has been characterized as "among the most precious of the liberties safeguarded by the Bill of Rights."  United Mine Workers v. Ill. State Bar Ass'n, 389 U.S. 217, 222 (1967).  The right of petition, in the prison context, means that inmates must be "permit[ted] free and uninhibited access . . . to both administrative and judicial forums for the purpose of seeking redress of grievances against state officers."  Sostre v. McGinnis, 442 F.2d 178, 200 (2d Cir. 1971) (en banc), cert. denied, 404 U.S. 1049 (1972). "[I]ntentional obstruction of a prisoner's right to seek redress of grievances is precisely the sort of oppression that . . . section 1983 [is] intended to remedy."  Franco v. Kelly, 854 F.2d 584, 589-90 (2d Cir. 1988) (internal quotations omitted).

A prisoner's right to petition the government for a redress of grievances under the First Amendment further precludes prison officials from retaliating against a prisoner by punishing a prisoner for actions he takes in the exercise of those rights.

See Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995). Punishing a prisoner for the content of a filed grievance unduly burdens the prisoner's ability to file a grievance at all, because, from the perspective of the prisoner, the chilling effect on the exercise of his First Amendment rights is the same as if he were punished for filing a grievance. Id. While prison officials may make policy that is reasonably related to legitimate penological interests, even at the expense of certain constitutional rights, Turner v. Safley, 482 U.S. 78, 89-90 (1987), "actions otherwise supportable lose their legitimacy if designed to punish or deter an exercise of constitutional freedoms." Ferranti v. Moran, 618 F.2d 888, 892 n.4 (1st Cir. 1980); see also Goff v. Burton, 7 F.3d 734, 738 (8th Cir. 1993) (prison officials cannot lawfully impose a disciplinary sanction against a prisoner in retaliation for the prisoner's exercise of his constitutional right).

Starr alleges that the filing of the disciplinary charges, as well as the destructive cell search conducted one day after his not guilty plea, amount to improper retaliation for the content of his grievance and thus constitute an improper restraint on the exercise of his First Amendment rights. See

Ferranti, 618 F.2d at 892 (chronology of events provided support for inference of retaliation), McDonald v. Hall, 610 F.2d 16, 18 (1st Cir. 1979) (same).  The allegations in Starr's complaint are sufficient to state a cause of action against Dube and Lorvan in their individual capacities.

Starr names Cattell and Vinson in this action in their individual supervisory capacities.  "Supervisory liability under § 1983 cannot be predicated on a respondeat theory, but only on the basis of the supervisor's own acts or omissions." Matos v. Toledo Davila, 135 F.3d 182, 192 (1st Cir. 1998).  A supervisor must be "either a primary actor involved in, or a prime mover behind, the underlying violation." Camilo-Robles v. Zapata, 175 F.3d 41, 43-44 (1999).  There must be "an affirmative link, whether through direct participation or through conduct that amounts to condonation or tacit authorization." Id. at 44.  Both Cattell's and Vinson's actions can be construed as conduct that amounts to authorization and condonation of the improper retaliation alleged.  Accordingly, I will allow this action to proceed against both Cattell and Vinson in their individual supervisory capacities.

## Conclusion

As I find that plaintiff has stated a claim upon which relief may be granted, I order the complaint (document no. 1) be served on Defendants. The Clerk's office is directed to serve the New Hampshire Office of the Attorney General ("AG"), as provided in the Agreement On Acceptance Of Service, copies of this order and the complaint (document no. 1). See LR 4.3(d)(2)(C). Within thirty days from receipt of these materials, the AG will submit to the court an Acceptance of Service notice specifying those defendants who have authorized the AG's office to receive service on their behalf. When the Acceptance of Service is filed, service will be deemed made on the last day of the thirty-day period.

As to those defendants who do not authorize the AG's office to receive service on their behalf or whom the AG declines to represent, the AG shall, within thirty days from receipt of the aforementioned materials, provide a separate list of the last known addresses of such defendants. The Clerk's office is instructed to complete service on these individuals by sending to them, by certified mail, return receipt requested, copies of these same documents.

Defendants are instructed to answer or otherwise plead within thirty days of acceptance of service.  See Fed. R. Civ. P. 12(a)(1)(A).

Plaintiff is instructed that all future pleadings, written motions, notices, or similar papers shall be served directly on the Defendants by delivering or mailing the materials to them or their attorneys, pursuant to Fed. R. Civ. P. 5(b).

**SO ORDERED.**

_____
James R. Muirhead
United States Magistrate Judge

Date: January 17, 2006

cc:   Darren Starr, *pro se*