```
                  UNITED STATES DISTRICT COURT

                   DISTRICT OF NEW HAMPSHIRE


Darren Starr,
     Plaintiff

     v.                                Civil No.05-cv-264-SM
                                       Opinion No. 2007 DNH 153
Cpl. Denis Dube, Lt. John Loven,
Bruce Cattell, and John Vinson,
     Defendants
```

**O R D E R**

Darren Starr, an inmate in the Northern Correctional Facility has sued in two counts, under 42 U.S.C. § 1983, claiming that defendants violated his First Amendment rights by issuing a disciplinary report against him (Count I) and conducting a destructive search of his cell (Count II) in retaliation for his having invoked the internal prison grievance procedure. Before the court are plaintiff's motion for summary judgment on Count I (document no. 22) and defendants' motions for summary judgment on Count I (document no. 28) and Count II (document no. 30), respectively. Each motion is duly opposed. For the reasons given, plaintiff's motion for summary judgment is denied; defendants' motion for summary judgment on Count I is granted; and defendants' motion for summary judgment on Count II is denied.

**Summary Judgment Standard**

Summary judgment is appropriate when the record reveals "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). "An issue is genuine if, on the evidence presented, it 'may reasonably be resolved in favor of either party.'" Cordi-Allen v. Conlon, 494 F.3d 245, 249 (1st Cir. 2007) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990)). "[A] fact is material if it would affect the outcome of the case." Brown v. Latin Am. Music Co., 498 F.3d 18, 22 (1st Cir. 2007) (citing Cochran v. Quest Software, Inc., 328 F.3d 1, 6 (1st Cir. 2003)). "The object of summary judgment is to 'pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required.'" Dávila v. Corporación de P.R. para la Diffusión Pública, 498 F.3d 9, 12 (1st Cir. 2007) (quoting Acosta v. Ames Dep't Stores, Inc., 386 F.3d 5, 7 (1st Cir. 2004)).

To defeat a motion for summary judgment, "the non-moving party 'must set forth specific facts showing that a genuine issue of material fact exists as to each issue upon which [he] would bear the ultimate burden of proof at trial.'" Torres-Negron v. Merck & Co., 488 F.3d 34, 39 (1st Cir. 2007) (quoting Santiago-

Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 53 (1st Cir. 2000)).  To make that showing, "the non-moving party may not rest merely upon the allegations or denials in its pleading." Id. (citation omitted).  When ruling on a party's motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor.  See id. (citing Rodríguez v. SmithKline Beecham, 224 F.3d 1, 5 (1st Cir. 2000)).

## Background

On July 23, and September 4, 15, and 17, 2003, plaintiff Starr submitted Inmate Request Slips (IRSs) to complain about four separate incidents in which Corporal Denis Dube presented him with invoice slips at the prison canteen in a manner that Starr considered inappropriate.

In the September 15 IRS, Starr stated: "Cpl. Dube is simply being an unprofessional little man with an unreasonable control problem."  (Compl., Ex. 4.)  On September 16, Lieutenant John Loven spoke with Cpl. Dube about Starr's September 15 IRS, and "told [him] that if he thought inmate Starr was being disrespectful towards him, he [Cpl. Dube] could write a D-Report" and that he, Lt. Loven, "could do the investigation after the

review process if he [Dube] chose to write him [Starr] up." (Pl.'s Mot. Summ. J., Ex. B, at 1.)  Cpl. Dube did, in fact, lodge a Disciplinary Report (D-Report), dated September 16, charging Starr with violating Disciplinary Rule 14B ("Rule 14B"), which prohibits insubordination or disrespect toward a staff member.  (Compl., Ex. 5.)  It is undisputed that the basis for the D-Report was the language Starr used in his September 15 IRS and, in particular, the "little man" comment.  (Pl.'s Mot. Summ. J., Ex. A, at 2; Pl.'s Obj. to Summ. J. (document no. 31), Ex. 7, at 3.)

Lt. Loven investigated Cpl. Dube's D-Report and recommended that the incident "be processed as a minor disciplinary infraction with sanctions of 20 hours extra duty [and] 10 days loss of recreation (suspended 90 days)."  (Compl., Ex. 5.)  On September 17, Lt. Loven told Starr about the results of his investigation, and Starr pleaded not guilty to the infraction.  (Id.)  On September 22, Starr was served with a Notice of Disciplinary Hearing.  (Id.)  At the September 24 hearing, the D-Report was dismissed without prejudice, due to irregularities in the investigation, and Starr did not serve any extra duty or lose any recreation time as a result of it.  (Compl., Ex. 9.)

On September 15, 2003, Media Generalist Angela Poulin filed an incident report in which she stated that an issue of the <u>New Hampshire Bar News</u> was missing from the prison's law library. (Def.'s Mot. Summ. J. (document no. 30), Ex. A.)  More specifically, she reported that the missing <u>Bar News</u> was last seen in the library at 10:45 a.m. on September 11 when it was identified on an inventory checklist, and that between 10:45 on September 11 and 6:53 a.m. on September 15, when the <u>Bar News</u> was reported missing, the only inmates who had visited the library were plaintiff and William Looney.  (<u>Id.</u>)

At approximately 10:30 a.m. on September 18, Starr asked Lt. Loven whether he had processed the IRS he had filed on the previous day.  (Pl.'s Obj. to Summ. J. (document no. 31), Ex. 9 (Starr Aff.) ¶ 8.)  Lt. Loven responded by saying "I'll go process it now."  (<u>Id.</u>)  At 10:45, Starr went to the law library with Looney.  (Starr Aff. ¶ 8.)

Also on September 18, Cpl. Dube approached Sergeant Wilson with Poulin's incident report and asked the sergeant if he had anyone who could search the cells of Starr and Looney.  (Pl.'s Obj. to Summ. J. (document no. 31), Ex. 7, at 1.)  Sgt. Wilson responded that he did not, and told Cpl. Dube to search the two

5

cells if he had the time.  (Id.)  Cpl. Dube searched both cells, without either inmate present.  (Id., Ex. 4 (Looney Aff.) ¶ 4; Starr Aff. ¶ 8.)  While Cpl. Dube left Looney's cell in good condition (Looney Aff. ¶ 4), it is undisputed that he ruined much of Starr's stored food by pouring it out and contaminating it with toiletries and cleaning supplies, destroyed photographs and magazines, and damaged Starr's legal materials by, among other things, ruining many of his legal papers with food and cleaning supplies and throwing a law book into the toilet (Starr Aff. ¶ 8; Compl., Ex. 6 ¶ 4; Pl.'s Obj. to Summ. J. (document no. 31), Ex. 3, at 2-3).

Starr exhausted available administrative remedies regarding the D-Report and the destruction of his property through the prison grievance procedure, to no avail.  This action followed.

## Discussion

Both parties have moved for summary judgment on Count I, and defendant has moved for summary judgment on Count II.  The court considers each count in turn.

Count I

In Count I, plaintiff asserts that defendants violated his First Amendment rights by issuing a false disciplinary report against him for filing the September 15 IRS containing the "little man" comment. Both parties move for summary judgment on Count I. Defendants argue that: (1) prosecuting a Rule 14B infraction based upon insubordinate or disrespectful statements made in an IRS does not violate an inmate's constitutional rights; and (2) even if they did violate plaintiff's constitutional rights, an award of money damages is precluded by the doctrine of qualified immunity.

42 U.S.C. § 1983 creates a cause of action against any person who, under color of State law, deprives another of any rights, privileges, or immunities secured by the Constitution or the laws of the United States. The First Amendment to the U.S. Constitution, made applicable to the states by the Fourteenth Amendment, guarantees both freedom of speech and the right to petition the government for the redress of grievances. Moreover, "[t]he 'government' to which the First Amendment guarantees a right of redress of grievances includes . . . prison authorities." Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995) (citing Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310,

7

1314 (9th Cir. 1989)). The government may violate a person's First Amendment rights either by denying him the opportunity to exercise those rights or by taking adverse action against him because he has exercised them. See Ward v. Hickey, 996 F.2d 448, 452 (1st Cir. 1993) ("a school committee violates the First Amendment . . . if it denies rehiring in retaliation for a nontenured teacher's exercise of constitutionally protected speech").

The elements of a retaliation claim brought by a prisoner have been described by the court of appeals for the Fifth Circuit as follows:

> To prevail on a claim of retaliation, a prisoner must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation. Causation requires a showing that "but for the retaliatory motive the complained of incident . . . would not have occurred." Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir. 1997) (quoting Woods [v. Smith], 60 F.3d [1161,] 1166 [(5th Cir. 1995)]), cert. denied, 522 U.S. 995 (1997).

McDonald v. Steward, 132 F.3d 225, 231 (5th Cir. 1998) (parallel citations omitted); cf. McDonald v. Hall, 610 F.2d 16, 18 (1st Cir. 1979) (holding that prisoner who alleged that he was

transferred in retaliation for exercising his right of access to the courts stated a claim under § 1983).

The parties engage on the constitutionality of applying Rule 14B to statements made by prisoners in written grievances, under the standards enunciated by the United States Supreme Court in Turner v. Safley, 482 U.S. 78 (1987), and reaffirmed in Shaw v. Murphy, 532 U.S. 223 (2001). While it appears likely that a prison disciplinary rule banning insubordination and disrespect may be applied, constitutionally, to written communications made during an internal prison grievance process, Count I may be resolved on grounds that do not require constitutional analysis.

The third element of plaintiff's cause of action requires proof of "a retaliatory adverse act." McDonald, 132 F.3d at 231. Here, plaintiff has failed to allege such an act, much less produce evidence that he suffered one.

The court of appeals for this circuit has held that an inmate alleging that he was transferred from one prison to another because he filed claims against prison officials sufficiently stated a retaliation claim under § 1983, see McDonald, 610 F.2d at 18, and that an inmate sufficiently stated

9

a retaliation claim based upon denial of a timely transfer to minimum security, denial of permission to consult an outside specialist for a back injury, and harassment by the prison medical staff, see Ferranti v. Moran, 618 F.2d 888, 892 (1st Cir. 1980).  But the court has yet to specifically identify the threshold an act must clear before it qualifies as a "retaliatory adverse act."

The Fifth Circuit, however, has described that threshold, after surveying its own precedent and relevant decisions from several other circuits.  See Morris v. Powell, 449 F.3d 682, 684-86 (5th Cir. 2006).  In Morris the court held that, "an inmate must allege more than de minimis retaliation to proceed with such a claim."  Id. at 684-85.  As a theoretical matter, a retaliatory act is "more than de minimis" if it "would chill or silence a person of ordinary firmness from future First Amendment activities."  Id. at 685-86 (quoting Crawford-El v. Britton, 93 F.3d 813, 826 (D.C. Cir. 1996) (en banc), vacated on other grounds, 523 U.S. 574 (1998).  On the other hand: "Some acts, though maybe motivated by retaliatory intent, are so de minimis that they would not deter the ordinary person from further exercise of his rights.  Such acts do not rise to the level of

constitutional violations and cannot form the basis of a § 1983 claim." Morris, 449 F.3d at 686.

Moving from the theoretical to the practical, the Morris court offered the following examples:

> In Jones v. Greninger, 188 F.3d 322, 325-26 (5th Cir. 1999), we affirmed the dismissal of a claim alleging that the inmate had been restricted to five hours a week in the law library in retaliation for filing grievances. Although retaliatory intent was properly alleged, the inmate's claim failed because the retaliatory adverse acts did not rise to the level of a constitutional violation. Similarly, in Gibbs v. King, 779 F.2d 1040, 1046 (5th Cir. 1986), we upheld a dismissal, writing that "a single incident, involving a minor sanction, is insufficient to prove [retaliatory] harassment." Thus, without explicitly applying a de minimis test, this court has refused to recognize retaliation claims based only on allegations of insignificant retaliatory acts.
>
> When confronted with more serious allegations of retaliation, however, we have not hesitated to recognize the legitimacy of an inmate's claim. In Hart v. Hairston, 343 F.3d 762, 764 (5th Cir. 2003), we reversed summary judgment dismissing a retaliation claim where the alleged adverse act was twenty-seven days of commissary and cell restrictions. Although we declined to adopt such a test, we noted that "the penalties imposed on Hart do not qualify as 'de minimis' under various standards cited by other circuits."
>
> Likewise, in Parker v. Carpenter, 978 F.2d 190, 192-93 (5th Cir. 1992), we held that retaliation in the form of transferring the inmate to a more violent section of the prison was sufficient to support a retaliation claim. In Jackson v. Cain, 864 F.2d 1235, 1248 (5th Cir. 1989), we overturned summary judgment

> where an inmate alleged that he had been transferred to a less desirable job within the prison in retaliation for filing grievances. The inmate, who had worked in a light labor job, was moved for forty-seven days to a job that subjected him to extreme hardship and serious health risks.

449 F.3d at 685 (footnotes omitted).

The retaliatory adverse act alleged in Count I – the issuance of a D-Report that was dismissed before any discipline was actually imposed – is less substantial than the least substantial de minimis act identified by the Morris court. In both Jones and Gibbs, discipline was actually imposed. Here, by contrast, the disciplinary actions recommended by Lt. Loven – relatively minor to begin with – were never imposed because plaintiff's D-Report was dismissed at the September 24 hearing. On that basis, the court has no difficulty concluding that Count I fails as a matter of law for want of a cognizable retaliatory adverse act.

Count II

In Count II, plaintiff asserts that Cpl. Dube violated his First Amendment rights by conducting a destructive search of his cell in retaliation for the four IRSs he filed concerning Cpl. Dube's conduct at the canteen. Defendants move for summary

judgment on Count II on two separate grounds: (1) plaintiff's failure to show that he had a First Amendment right; and (2) his failure to provide evidence of a retaliatory motive sufficient to overcome their explanation for the search of his cell, i.e., Angela Poulin's report of missing library materials.  In other words, defendants engage on the first and fourth elements of plaintiff's cause of action, those requiring the identification of a constitutional right and proof of causation.  See McDonald, 132 F.3d at 231.

    Defendants' first argument is not persuasive.  They merely incorporate the argument in their motion for summary judgment on Count I, contending that under relevant Supreme Court precedent, it was not unconstitutional to initiate disciplinary action under Rule 14B in response to the "little man" comment in plaintiff's September 15 IRS.  That may be so, but defendants misunderstand plaintiff's complaint.  Unlike Count I, which alleges that defendants retaliated against plaintiff for the "little man" comment in his September 15 IRS, Count II alleges that defendants, and in particular Cpl. Dube, retaliated against him for filing four IRSs complaining about Cpl. Dube's actions in the canteen, the last of which was filed the day before Cpl. Dube ransacked his cell and processed just beforehand.  Regardless of

whether plaintiff had a constitutional right to call Cpl. Dube a "little man" in an IRS, he surely had a constitutional right to invoke the prison's own grievance procedure and file the four IRSs complaining about Cpl. Dube.  See Morris, 449 F.3d at 684 ("A prison official may not retaliate against or harass an inmate for complaining through proper channels about a guard's misconduct.") (citation omitted).  Thus, defendants have not demonstrated that plaintiff has failed to establish the first element of his claim.

   Defendants' second argument is similarly unavailing.  As noted above, the fourth element of plaintiff's cause of action requires him to prove that "but for the retaliatory motive the complained of incident . . . would not have occurred."  McDonald, 132 F.3d at 231 (citation omitted).  According to defendants, they are entitled to judgment as a matter of law on Count II because: (1) Poulin's incident report conclusively shows that there was a legitimate reason for searching plaintiff's cell, unrelated to his exercise of First Amendment rights; and (2) plaintiff has alleged no more than "a bare allegation of temporal proximity" to support the causation element.

Poulin's incident report provided a legitimate basis upon which to search plaintiff's cell, but does not conclusively establish that Cpl. Dube's execution of the search was either legitimate or non-retaliatory.  Plaintiff has also produced evidence beyond simple allegations of temporal proximity to support the causation element.  Among other things, plaintiff has produced evidence that: (1) Cpl. Dube, the target of plaintiff's four IRSs, personally brought Poulin's incident report to Sgt. Wilson's attention and virtually volunteered to search plaintiff's cell; (2) after plaintiff and inmate Looney visited the library on September 11 – the day on which the Bar News is alleged to have gone missing – Cpl. Dube searched both plaintiff and Looney on their way back from the library to their cells, and found neither inmate in possession of any library materials; (3) after it was searched, Looney's cell was left in an orderly condition, while, in plaintiff's cell, Cpl. Dube opened sealed containers of food that could not possibly have concealed the Bar News for which he was purportedly searching, dumped food on plaintiff's bunk and contaminated it with toiletries, destroyed photographs, poured food and toiletries onto plaintiff's legal

papers, and threw a law book into the cell's toilet,[1] and left the cell in that condition.

In other words, plaintiff has produced evidence from which a reasonable jury could conclude that Cpl. Dube sought out the opportunity to search plaintiff's cell for library materials he knew plaintiff did not have, and used the occasion of that pretextual search to ransack the cell and destroy plaintiff's property, in retaliation for plaintiff's four complaints about his conduct in the canteen. Thus, plaintiff's evidence concerning Cpl. Dube's volunteering to search his cell, Dube's search of plaintiff and Looney after they left the law library on September 11, and the scope and manner of executing the search of plaintiff's cell (both on its own and as compared with the search of Looney's cell[2]), taken together, is sufficient to create a

---

[1] Defendants have produced no evidence contradicting plaintiff's description of the search and its aftermath. They also appear to concede that Cpl. Dube violated prison policy — PPD 5.22, IV(4)(C)(1) and (2) — by searching plaintiff's legal papers in his absence, and without showing that it was not feasible to have him present, and by failing to attempt to leave his legal papers "in the same condition and in the same order that they were in prior to the cell search."

[2] Defendants argue that the fact that Cpl. Dube searched both plaintiff's cell and Looney's cell demonstrates that the search of plaintiff's cell was not retaliatory. That argument overlooks the uncontested fact that while searching two cells for the very same contraband, Cpl. Dube left one cell, Looney's, in

triable issue of material fact regarding the causation element of plaintiff's claim.  As the causation element is the only one defendants challenge in their motion for summary judgment on evidentiary grounds, they are not entitled to judgment as a matter of law on Count II.

### Conclusion

For the reasons given, plaintiff's motion for summary judgment (document no. 22) is denied; defendants' motion for summary judgment on Count I (document no. 28) is granted; and defendants' motion for summary judgment on Count II (document no. 30) is denied.  Accordingly, this case remains on track for trial on Count II.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

December 7, 2007

cc:  Darren Starr, pro se
     Glenn A. Perlow, Esq.
     Mary E. Maloney, Esq.

---

good condition, while his search of the other cell, plaintiff's, resulted in the destruction of plainly unrelated property, including legal material, for no apparent reason.